## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 10-02944-TLM |
| KEITH STEWART BORUP and ) | |
| JUDITH ANN BORUP, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION ON TRUSTEE'S
### OBJECTION TO CLAIM NO. 2-2
_____

On September 13, 2013, the chapter 7 trustee, Richard E. Crawforth ("Trustee"), filed an objection, Doc. No. 244 ("Objection"), to Claim No. 2-2 ("Claim"), filed by Todd McCulloch ("Creditor").[1] The Objection came on for hearing on October 21, 2013. Trustee appeared through counsel. Creditor appeared *pro se*. Counsel and Creditor made arguments. Both relied on the various documents attached to the Claim and to the Objection, but no testimony was offered and no exhibits were admitted into evidence. The Court took the Objection under advisement. This Decision constitutes the Court's findings and conclusions on this contested matter pursuant to Rules 7052 and 9014.

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code, §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure. The Court also takes judicial notice of its files and records in this bankruptcy case. *See* Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 1

**BACKGROUND**

Creditor's proof of claim was initially filed on March 25, 2011 and was designated Claim No. 2-1.[2] Claim No. 2-1 asserted a debt owed to Creditor by chapter 7 debtors, Keith and Judith Borup ("Debtors"), in the amount of $104,210.80, of which $3,608.46 was asserted as a priority unsecured claim under § 507(a)(4) and the balance as a general unsecured claim.[3] Creditor filed an amended proof of claim, Claim No. 2-2, on May 22, 2013. While attachments to the proof of claim substantially increased, the total amount of the Claim, and the asserted priority portion, remain the same.

Creditor's Claim commences with 14 pages of assertion and argument. *Id.* at pp. 2–15. This is an increase from 2 pages of explanation in Claim No. 2-1. It reads like a complaint, asserting over the course of 89 numbered paragraphs allegations and contentions regarding the conduct and actions of Debtors and of

---

[2] For context, a review of the claim docket reflects that Creditor's Claim is one of seven filed in this case. Claim Nos. 1 and 3 together total over $1,464,000; Claim Nos. 4, 5 and 6 total approximately $4,272; Claim No. 7 was only recently filed in December 2013, and is asserted as a secured claim only (and would be untimely filed if asserted as unsecured). What Trustee has available to distribute, either in gross amount or net of administrative expenses, is unknown, though clearly the bulk of distributions to unsecured creditors will be made on Claim Nos. 1 and 3 unless those claims are otherwise amended or disallowed.

[3] Section 507(a)(4) gives an unsecured claim a fourth position priority if it is an allowed claim against a debtor for wages, salary or commission earned within 180 days before the earlier of the cessation of debtor's business or the filing of the debtor's bankruptcy petition.

MEMORANDUM OF DECISION - 2

numerous entities with which Debtors were associated.[4]

Many of the assertions appear to be similar to those raised in two prior adversary proceedings: *United States Trustee v. Keith and Judith Borup*, Adv. No. 11-06026-TLM, and *Crawforth v. Kandj Family Ltd. Partnership*, Adv. No. 12-06018-TLM.[5] In fact, Creditor refers to the "claims and complaints" brought by both chapter 7 trustees, the United States Trustee and others as sharing a common theme. Claim at p. 14 ¶ 89. Creditor "prays for relief" in his Claim, asking that the Court "consider the transfers of real property and cash . . . as fraudulent conveyances;" "recognize the various entities . . . as alter egos" of the Borups; "hold[] Keith Borup personally responsible for wages due to employees" and "allow treble damages for the wage claims;" and "allow [an] unpaid shareholder distribution" and "unpaid shareholder liquidation[s]." *Id.* at

---

[4] Creditor actually states in the Claim that "[i]n an effort to consolidate and expedite legal proceedings against [Debtors'] estate, I was advised to file a claim with this court rather than bring an adversary proceeding." *Id.* at p. 13 ¶ 87. Creditor does not indicate who gave him such advice.

[5] The United States Trustee's action sought denial of Debtors' discharge under §§ 727(a)(2)(B), (a)(4) and (a)(6). It was dismissed as to Judith Borup. It was rendered moot as to Keith Borup, and thus dismissed, after he waived his discharge. *See* Doc. Nos. 77, 79. (Judith Borup, however, received her discharge. Doc. No. 95.)
    Trustee's adversary proceeding, Adv. No. 11-06018-TLM, sought to avoid fraudulent transfers under the Code and state law; to disregard the separateness of multiple corporate entities; to impose a constructive trust; and other relief. It was later consolidated with *Gugino v. 7 Dwarves Family Ltd. Partnership*, Adv. No. 11-06031-JDP, a similar suit brought by the chapter 7 trustee in the related case of Dean and Gail Borup. The latter adversary proceeding was designated as the "lead case" following consolidation. After requests for approval of compromises, *see* Doc. Nos. 108, 155, were granted in August 2012, *see* Doc. No. 115, Trustee dismissed his adversary proceeding.

MEMORANDUM OF DECISION - 3

pp. 14–15.  Almost one hundred pages of documents are attached.

In order to parse with precision the components that make up the $104,210.80 asserted in the Claim, the Court refers to certain of Creditor's allegations and to his "prayer for relief" in the Claim, *id.* at pp. 14–15, and considers the arguments that were made at hearing.

### A. The "bonus" wage claim

Creditor argues he is a shareholder and a former employee of Borup Construction, Inc., an Idaho corporation ("BCI").  *Id.* at p. 3 ¶ 1.  Creditor commenced an action to recover on an allegedly promised "bonus" on April 21, 2009.  *See* Objection at 7–14 (state court complaint).  The complaint against BCI alleged Creditor was to be paid a bonus of 4% of BCI's net income once BCI filed its 2006 corporate income tax return, and such return was filed on June 14, 2007.  *Id.* at 9.  Creditor claims to be owed $33,532.80 for this bonus, and asserts it is a wage claim and, therefore, Creditor is entitled to treble damages under Idaho Code § 45-615(2).  Claim at p. 5 ¶ 34; Objection at 9, 11–12.[6]  The Claim seeks allowance of a bonus wage claim of $100,599.00.  Claim at p. 15.[7]

---

[6] While the state court issued partial summary judgment in April 2011, it did not address this claim to a "bonus," but only the wage claim discussed later in this Decision.  Objection at 15–19.  In his Claim, Creditor indicates a trial date was set for October 22, 2013, on the other claims against BCI in the state court case.  *See* Claim at p. 5 ¶ 26.

[7] Trebling $33,532.80 equals $100,598.40.  Creditor rounds it up.

MEMORANDUM OF DECISION - 4

**B.     The wage claim**

The face of Creditor's Claim alleges Debtors owe him a total of $104,210.80.  When the asserted "bonus claim" of $100,598.40 is deducted, an amount of $3,612.40 remains.  The face of the Claim asserts a priority wage claim of $3,608.46.[8]  *Id.* at p. 1 (referencing § 507(a)(4)).  This separate wage claim appears to arise from Creditor's final paycheck.  The state court decision established BCI owed Creditor $1,202.82 and failed to tender that amount to him within the time frames required under Idaho wage statutes.  Though BCI ultimately paid him that amount, it was untimely paid, and the state court therefore allowed Creditor treble damages against BCI regarding this late paid amount.  The treble damages equal $3,608.46.  Objection at 15–19.

**C.     Other claims**

Although the face of the Claim asserts Debtor owes Creditor $104,210.80 for "services performed," *id.* at p. 1, the "prayer" in the Claim refers to other asserted claims and damages.  For example, Creditor alleges he is entitled to a "shareholder distribution" from BCI of $50,299.00, Claim at p. 5 ¶ 32, and at p. 15 ¶ 5; a "lost stock value" of $24,000, *id.* at p. 8 ¶ 47, and at p. 15 ¶ 6; and a "shareholder distribution" from Borco Family Limited Partnership of $73,421.00

---

[8] If the $3,608.46 priory wage claim is subtracted from the $3,612.40 remaining of the face amount of the Claim (*i.e.*, the amount asserted net of the "bonus" wage claim), the remainder is $3.94.  This small difference is unexplained.

MEMORANDUM OF DECISION - 5

*id.* at p. 10 ¶ 57, and at p. 15 ¶ 7. Creditor also asserts claims sounding in potential recovery of fraudulent transfers. And he seeks a ruling that all of the several and various entities he names be found to be the alter egos of Debtors and that Debtors should therefore be held liable for those entities' obligations.[9]

**STANDARDS APPLICABLE TO *PRO SE* LITIGANTS**

While the Court makes "reasonable allowances" for *pro se* litigants and construes their pleadings and papers liberally, *see*, *e.g.*, *Hyatt v. Hyatt (In re Hyatt)*, 2011 WL 6179267 at *4 (Bankr. D. Idaho Dec. 13, 2011), it is still the *pro se* litigant's burden to establish a proper legal basis for any relief sought or defense raised, and to follow the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules. *See*, *e.g.*, *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 781 n.2 (9th Cir. BAP 2000) ("*Pro se* appellants are accorded some leeway, but cannot ignore the Code and Rules, and the rules of this court."). Further, the Court must be careful not to act as the *pro se* litigant's advocate, *Jones v. Dole Food Co., Inc.*, 827 F. Supp. 2d 532, 536 (W.D.N.C. 2011), *aff'd* 473 F. App'x 270 (4th Cir. 2012).

The Court has therefore been generous in its reading and interpretation of Creditor's submissions and in evaluating the arguments he advances. Yet the

---

[9] The $104,210.80 amount of the Claim does not include these other amounts. This, together with the extended allegations in the 14-page attachment, suggests Creditor would like to pursue litigation to try to establish Debtors' personal liability for BCI and Borco's obligations, using the claim as an alternative to an adversary proceeding.

MEMORANDUM OF DECISION - 6

resolution of the Objection rests on the requirements of the Code and Rules as applied to the record before the Court.

**STANDARDS APPLICABLE TO CLAIM OBJECTIONS**

This Court has previously summarized:

> Once a proof of claim is filed, it is prima facie evidence of the claim's validity, Rule 3001(f), and is deemed allowed unless a party in interest objects under § 502. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Once an objection is made, a proof of claim is still sufficient absent evidence of its invalidity. *Id.* (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). The burden of providing evidence of a proof of claim's invalidity rests with the objector. *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706–07 (9th Cir. BAP 2006). If a debtor produces evidence to rebut the presumption of validity, the burden of persuasion shifts back to the claimant. *Id.*

*In re Holliday*, 11.2 I.B.C.R. 97, 97, 2011 WL 2518845, *2 (Bankr. D. Idaho June 23, 2011); *see also In re Parrott Broad. Ltd. P'ship*, 492 B.R. 35, 38 (Bankr. D. Idaho 2013).

In proof of claim litigation under § 502(b)(1), the validity of the claim is determined under applicable nonbankruptcy law. *Mandalay Resort Grp. v. Miller (In re Miller)*, 292 B.R. 409, 412 (9th Cir. BAP 2003); *see also Parrott Broad.*, 492 B.R. at 40 (citing *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir. 1985)). Everything presented by the parties here supports the conclusion that Idaho law applies.

These, and other established standards and principles in claim litigation,

MEMORANDUM OF DECISION - 7

will be applied below.

**DISCUSSION AND DISPOSITION**

Trustee's Objection asserts numerous arguments. The Court finds that not all need be addressed.[10]

**A.     The "bonus" wage claim**

The Claim suggests debtor Keith Borup "agreed to pay" this bonus in a verbal agreement and never made such payment. However, the state court complaint asserts the claim solely against BCI, and that complaint was verified by Creditor. Objection at 14.

Trustee's Objection as to the bonus wage claim squarely raises the issue of individual debtor liability to Creditor for the obligations owed (or allegedly owed) by BCI—a precursor or prerequisite to allowing a claim that can be paid through Trustee's distribution of liquidated property of these individuals' bankruptcy estate. Under the burden shifting authorities discussed above, this Objection, combined with Creditor's allegations from the state court complaint, met and rebutted the *prima facie* assertions of the Claim, and put the burdens of going forward with evidence and of persuasion on Creditor.

---

[10] Trustee is given the benefit of, and may assert, state law defenses that would be available to a debtor. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1281 (9th Cir. 2000). Thus, Trustee has asserted statutes of limitations and other defenses barring Creditor's Claim. As the Court sustains Trustee's Objection for other reasons, described *infra*, the Court need not evaluate these defenses.

MEMORANDUM OF DECISION - 8

Creditor points to the allegations of his Claim, which asks the Court to find that BCI is the alter ego of Keith and Judith Borup[11] and to find Keith Borup "personally responsible" for any wages due employees. However, the assertions make clear that Creditor has not, to date, established any personal liability of Keith Borup exists.[12]

In this regard, it is important to note that the filing of the Objection created a "contested matter" under the Bankruptcy Rules. *See* Advisory Committee Notes to Rule 3007 ("The contested matter initiated by an objection to a claim is governed by rule 9014, unless a counterclaim by the trustee is joined with the objection to claim."); Advisory Committee Notes to Rule 9014 ("For example, the filing of an objection to a proof of claim, to a claim of exemption, or to a disclosure statement creates a dispute which is a contested matter.").

Evidence is required on material factual disputes in contested matters. This Court has explained the need for evidence in contested matters:

---

[11] The Claim also seeks the same "alter ego" ruling as to Dean and Gail Borup, who are debtors in Case No. 10-02943-JDP. The Court will not address that assertion. It will note, however, that Case No. 10-02943-JDP has concluded, and the final report and accounting of the chapter 7 trustee therein has been approved by order of Bankruptcy Judge Pappas. It does not appear that Creditor filed a claim in that case.

[12] The "alter ego" or "piercing the corporate veil" theories require a plaintiff to seek and obtain a judicial ruling that the corporate form is to be disregarded, thereby making individuals liable for corporate debts. Under Idaho law, such a plaintiff must show both that there is a unity of interest and ownership such that the separateness of corporation and individual no longer exist, and that if corporate separateness is upheld, an inequitable result would follow or that it would sanction a fraud or promote injustice. *See Fetty v. DL Carlson Enters., Inc. (In re Carlson)*, 426 B.R. 840, 850–51 (Bankr. D. Idaho 2010) (citations omitted).

MEMORANDUM OF DECISION - 9

> Debtor's Motion seeking imposition of the stay is a contested matter under Rule 9014. As such, it "ordinarily requires trial testimony in open court with respect to disputed material factual issues in the same manner as an adversary proceeding." *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 44 (9th Cir. BAP 2012); *see also* Rules 9014(d) and 9017; Civil Rule 43(a) ("At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these [Bankruptcy] rules, or other rules adopted by the Supreme Court provide otherwise.")

*In re Hart*, 2013 WL 693013, *2 (Bankr. D. Idaho Feb. 26, 2013) (there addressing a debtor's § 362(c) motion)

In *Hart*, the Court noted that its ability to resolve disputed issues of fact through declarations or affidavits required an agreement of the parties or other appropriate circumstances. *Id.* Here, Trustee and Creditor agreed the Court could consider the documents appended to the Claim, but those documents, when closely reviewed, do no resolve the issue of whether the claims asserted by Creditor against BCI may also be properly asserted against Debtors personally.

In sum, nothing in the provided documents establishes Creditor has obtained any state court ruling that BCI was the alter ego of Keith or Judith Borup, or any other reason to conclude the bonus wage claim lies against Debtors rather than against BCI or in addition to BCI. At best, Creditor's assertions are but allegations.

Creditor apparently thought that the claim allowance process would replace an adversary proceeding. But in any event, proof—as well as allegation—is

MEMORANDUM OF DECISION - 10

required. The requisite showing was not made. Creditor presented no competent evidence to carry the burden that had shifted to him. Trustee's Objection will be sustained.

**B.     The wage claim**

The state court determined the $3,608.46 wage claim was an obligation of BCI. Objection at 15–19 (establishing a treble damage penalty on BCI for a January 2009 wage obligation that was paid that same month but late). Neither individual debtor is a named defendant or adjudicated obligor. *Id.* For the same reasons as outlined immediately above, Creditor has not met the burdens of proof and persuasion to show this wage claim is assertable against Debtors personally and, thus, against the estate assets in the hands of Trustee. The Objection to this aspect of the claim will also be sustained.

**C.     The other claims**

The remaining claims alleging unpaid shareholder and partnership distributions share similar problems of proof.

### 1.     BCI shareholder and liquidation distribution claim

Creditor argues that the 2006 BCI tax return showed $838,320 in net income and, as a 6% shareholder, Creditor was therefore entitled to a distribution of $50,299. Claim at p. 5 ¶ 32. However, none of the documents submitted by Creditor with his Claim suggest, much less establish, that BCI was obligated to

MEMORANDUM OF DECISION - 11

distribute all 2006 net profit, as calculated on the 2007 tax return, to the BCI shareholders in proration to their stock ownership.[13] Nor has Creditor established that Idaho law otherwise gives him a cognizable claim to such a distribution.[14]

Even if Creditor had overcome these hurdles, this appears to be a potential claim against BCI or BCI's assets, not a claim against Keith or Judith Borup personally. And if Creditor impliedly contends Keith Borup is personally responsible for BCI's failure to provide distributions, he has not sustained the burdens, including the evidentiary burdens, established by the case authorities.

### 2.  BCI shareholder "liquidation" claims

Creditor also claims that, under direction by Keith and/or Dean Borup, BCI transferred several parcels of real property, liquidated a $320,000 money market account and transferred such amounts to another Borup-controlled entity, and engaged in similar improper transfers. Thus, he contends BCI was rendered insolvent, and Creditor's equity position in BCI, which he asserts was $24,000, was rendered valueless. Claim at pp. 6–8 ¶¶ 35–47.

---

[13] To the contrary, Creditor's verified state court complaint alleges BCI's shareholders decided to form "BFLP" [*i.e.*, Borco] and transfer BCI-owned real estate to Borco in an amount equal to the 2006 profits. Borco then issued limited partnership interests to the Borups, Creditor and others. Objection at 9–11. This would appear to transmute the asserted "distribution" claim into an ownership interest in Borco.

[14] The documents suggest BCI went out of business, though was not dissolved. Were BCI to be dissolved, Idaho law requires all its creditors be paid before any distributions could be made to equity holders. *See*, *e.g.*, *Carlson*, 426 B.R. at 852–53 (discussing dissolution and winding up requirements for corporations under Idaho law); *In re Young*, 409 B.R. 508, 513–15 (Bankr. D. Idaho 2009) (same).

MEMORANDUM OF DECISION - 12

This appears, in effect, to be the assertion of a common law claim seeking damages. Creditor argues BCI's obligations should be viewed as or held to be the personal obligations of Debtors, or at least of Keith Borup. No such adjudication preceded bankruptcy, and no such showing has been made in the context of this claim litigation.

Creditor alludes to Trustee's adversary proceeding against Debtors and various entities, including BCI, and its later settlement and related recoveries. *See*, *e.g.*, Claim at p. 4 ¶ 25, and at p. 14 ¶ 89. In August 2010, the Court approved a proposed compromise between Debtors, the defendant entities, and Trustee. Doc. No. 124. The underlying compromise was set out in Trustee's motion, Doc. No. 108. It resolved Adv. No. 12-06018-TLM (and consolidated Adv. No. 11-06031-JDP), which sought to avoid allegedly fraudulent transfers from Debtors to (sometimes multiple) subsequent transferees. Although the approved compromise provided significant recoveries, it did not adjudicate the alter ego issue as to such entities or substantively consolidate any of the entities with the two Borup individual bankruptcy estates. Rather, the bankruptcy estates recovered all real properties held by the defendant entities at the time of filing, and the parties agreed to divide the proceeds of the liquidation of such properties.[15]

---

[15] Generally, the two bankruptcy estates received 85% of the net value of the properties and the remaining 15% would be disbursed to the defendants in the adversary proceeding, although a possibility remained that the estates would receive 100% of certain properties

(continued...)

MEMORANDUM OF DECISION - 13

As before, Creditor is left with the need to establish Debtors are personally responsible for the alleged (and yet unproven) obligations of BCI or otherwise directly responsible. That has not been done, and the Objection will be sustained as to the BCI shareholder liquidation claims.

### 3. Borco claim

Creditor alleges he was a minority partner in Borco and Borco was terminated in March 2011. Claim at pp. 8–9 ¶ 49, and at p. 10 ¶ 59. He claims that before Borco was terminated, his capital account was not increased as promised, due to a breach of the Borco partnership agreement by Keith and Dean Borup, resulting in a $73,421 deficiency. *Id.* at pp. 9–10 ¶¶ 50–58.

The Borco partnership agreement provides that, in the event of liquidation and dissolution, the limited partners can look solely to partnership assets, and have no recourse or right or claim against the general partners. *Id.* attach. 3 at p. 16. Documents suggest that TLDK, Inc. was the general partner, and that, among others, Keith Borup and Creditor were limited partners. *Id.* attach. 3 at p. 18, and attach. at p. 1. Creditor has not established he, as a dissatisfied limited partner, holds a claim against Keith Borup personally (as a co-limited partner or otherwise) for the loss of investment in Borco under the entity's organizational documents.

---

[15](...continued)
depending on other factors. *Id.*

MEMORANDUM OF DECISION - 14

So, as above, given the rules and precedent establishing burdens in claim litigation, Creditor bore the burden of going forward and of persuasion and, failing to do that, the Objection will be sustained as to the Borco related claim.

While there are other specific factual assertions within the Claim, the Court's careful review leads it to conclude that all suffer the same proof defects as outlined above.

**CONCLUSION**

For the reasons stated, the Objection will be sustained and the Claim disallowed for distribution.[16]  Trustee shall submit a proposed form of order.

DATED:  January 9, 2014



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[16] As noted above, debtor Keith Borup waived his discharge.  By virtue of the waiver, Creditor is not prohibited, as a matter of bankruptcy law, from pursuing an adjudication of Keith Borup's personal liability in state court.  *Cf.* § 524(a) (prohibiting actions to establish or collect debts as personal liabilities of *discharged debtors*).  Obviously, this Court's Decision today speaks only of the bankruptcy claims allowance, and the Court ventures no comment on the merits of, or defenses to, any such attempt of Creditor to pursue Keith Borup post-bankruptcy.

MEMORANDUM OF DECISION - 15